IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GLEN AND KIM DELZ, INDIVIDUALLY AND AS NEXT FRIEND OF T. D., A MINOR | § § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO.:_____ JUDGE:_____ |
| v. | § § | |
| BLITZ U.S.A., INC., | § § | **JURY TRIAL DEMANDED** |
| *Defendant*. | § § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW Plaintiffs, Glen and Kim Delz, Individually and as Next Friend of T. D., a minor, and complain of Defendant, Blitz U.S.A., Inc. as follows:

### PARTIES

1. Plaintiffs, Glen and Kim Delz, are individuals and citizens of the State of Texas who reside in Kingsland, Llano County, Texas and are the biological parents of T. D., a minor.

2. Defendant, Blitz U.S.A., Inc. is an Oklahoma corporation that has engaged in business in the State of Texas but maintains its principal place of business in the State of Oklahoma. Blitz may be served with process by serving its registered agent, CT Corporation System, at 350 N. St. Paul Street, Dallas, Texas 75201-4201.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this lawsuit under 28 U.S.C. §1332 because diversity of citizenship exists between Plaintiffs and Defendant. Plaintiffs are citizens of the State of Texas, and Defendant is a foreign corporations that maintain their principal places of business outside of the State of Texas.

4. The amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

5. This Court also has jurisdiction over this lawsuit because Plaintiffs assert a claim for damages under the Consumer Product Safety Act, 15 U.S.C. § 2072.

6. This Court has jurisdiction over Defendant because they have purposefully availed themselves of the privilege of conducting activities in the State of Texas and, by placing their portable gasoline containers, including the subject container, into the stream of commerce, have established continuous and systematic contacts sufficient to confer general jurisdiction.

7. Jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

8. Venue in this district is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events and/or omissions giving rise to this claim occurred in Llano County, which is within the Western District of Texas.

## FACTS AND GENERAL ALLEGATIONS

9. On November 3, 2006, fourteen-year-old T. D. was attempting to start a fire in a barbeque pit when a Blitz five-gallon portable gasoline container, Model 11833, suddenly and violently exploded.

10. As a result of the explosion, T. D. was instantly covered with fire and burning gasoline.

11. A neighbor and a friend who heard the explosion rushed to the scene and extinguished the flames on T. D.'s body.

12. T. D. was immediately airlifted to the Parkland Hospital burn unit in Dallas, Texas. Two months later, he was transferred to Shriners Burn Hospital for Children in Galveston, Texas where he continued to undergo countless surgeries, procedures, and treatments, the majority of which were excruciatingly painful.

13. T. D. was finally released from Shriners on October 26, 2007, only a few days shy of his of his sixteenth birthday and almost a year from the date of the devastating explosion. While T. D. has been officially released from Shriners, his condition still requires that he and his family travel to and from Houston (where his doctors are now located) for continuing treatment and surgical procedures.

14. As a result of the explosion and the ensuing fire, T. D. suffered catastrophic third-degree burns over 80% of his body.

15. Upon information and belief, while T. D. was attempting to start the fire, gasoline vapors outside the portable gasoline container ignited and the flame followed the vapor trail back inside the container causing it to explode.

16. Defendant is the largest manufacturer of portable plastic gasoline containers in the United States, designed, manufactured, assembled, marketed, distributed, and sold the container that caused T. D.'s injuries.

17. The subject container was not modified or altered after it left Defendant's control, and T. D. was using the container in an ordinary and foreseeable manner.

18. As a result of Defendant's acts and/or omissions in the design, manufacture, assembly, marketing, distribution, and sale of the container, Taylor suffered, and continues to suffer, severe personal injuries, physical pain and impairment, physical disfigurement, and mental anguish caused by the explosion.

19. Further, as a result of his injuries, Plaintiffs have incurred significant medical and other related expenses and will require additional medical care in the future, resulting in additional expenses. T. D.'s injuries are permanent and his ability to perform ordinary activities and enjoy life has been permanently and adversely affected.

## COUNT I
### Strict Liability

20. Plaintiffs adopt the allegations of paragraphs 1 - 20 above and incorporate the same where relevant.

21. Plaintiffs invoke the doctrine of strict liability as provided by § 402A, Restatement (Second) of Torts and adopted by the Texas Supreme Court.

22. The Blitz portable gasoline container designed, manufactured, assembled, marketed, distributed, and sold by Defendant was defective and unreasonably dangerous.

23. Defendant is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling portable gasoline containers, including the container in the present case, to consumers within the stream of commerce.

24. Defendant expected the portable gasoline container, so introduced and passed on in the course of trade, to ultimately reach the consumer and/or users, such as Plaintiffs, without substantial change in the condition in which it was originally sold.

25. The portable gasoline container in the present case did in fact reach Plaintiffs without substantial change in the condition in which it was originally sold by Defendant and unexpectedly exploded under ordinary and foreseeable use.

26. At the time the portable gasoline container left Defendant's control, and at all times complained of, a safer alternative design was available that would have eliminated the risk of such an explosion without substantially impairing the usefulness and intended purpose of the product.

27. The portable gasoline container was unreasonably dangerous and defective in that its design and construction did not incorporate a flame arrester, an essential safety device that would have prevented the explosion in the present case.

28. A flame arrester, sometimes called a flash arrester or spark arrester, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents the flashback of flames back into the container. The device consists of either a perforated metal disc or a woven wire mesh screen.

29. The efficacy of flame arresters has been known to the manufacturing industry, particularly to the manufacturers of portable gasoline containers, since the early 1970's. Flame arresters were first placed in industrial gasoline containers in the 1950's and began being placed in consumer gasoline containers in 1978.

30. For more than a quarter century, the utility and efficacy of flame arresters has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed by consumers, users, and bystanders that have been burned and/or killed in encounters with portable gasoline containers that were not equipped with the device.

31. Consequently, Defendant has known, or should have known, for decades prior to this incident that gasoline containers without flame arresters are susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trail back inside the container causing it to explode and/or spew flames and burning gasoline).

32. Nevertheless, despite the wealth of available scientific knowledge, Defendant has made, and continue to make, a conscious decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate this simple, well-known safety device into their portable gasoline containers, even when it is apparent within the industry that the small, metal devices are both economically and technologically feasible.

33. Without a flame arrester, the foreseeable risk of injury and/or death associated with the use of the portable gasoline container far exceeded any utility and/or benefits associated with its design.

34. Further, the portable gasoline container was unreasonably dangerous and defective in that Defendant failed to provide adequate warnings of the potential dangers associated with the uses and misuses of their product, specifically the dangers associated with flashback.

35. Defendant failed to provide adequate warnings that would be reasonably calculated to catch the attention of a reasonably prudent person or that would convey a fair indication of the nature and extent of the dangers involved in using or misusing their product.

36. At the time the portable gasoline container left Defendant's control, consumers and/or foreseeable users, such as Plaintiffs, were not, and still are not, likely to possess knowledge of the extent and magnitude of the risks associated with using these portable gasoline containers as designed, nor could they possibly appreciate the severity of injuries that are likely to occur.

37. Without such knowledge, consumers and/or foreseeable users, such as Plaintiffs, would not be in a position to avoid the products inherent dangers through the exercise of ordinary and reasonable care. Conversely, Defendant knew, and were certainly in the best position to know, that their portable gasoline containers, as designed, posed a tremendous and horrific risk of injury and death to consumers, users, and bystanders.

38. Defendant's acts and/or omissions in the design, manufacture, assembly, marketing, distribution, and sale of the defective and unreasonably dangerous portable gasoline container were a producing cause of T. D.s injuries.

## COUNT II
**Negligence**

39. Plaintiffs adopt the allegations of paragraphs 1 - 39 above and incorporate the same where relevant.

40. Defendant owed consumers and/or foreseeable users, including Plaintiffs, a reasonable duty of care in the design and production of their portable gasoline containers, as well as in the marketing, distribution, and sale of said product.

41. Defendant ignored and/or breached that duty by their following negligent acts and/or omissions:

   A. Failed to design and produce a reasonably safe portable gasoline container;

   B. Designed, manufactured, assembled, marketed, distributed, and sold a portable gasoline container that was defective;

   C. Placed into the stream of commerce a portable gasoline container that was defective in design;

   D. Placed into the stream of commerce a portable gasoline container that was defective in that it failed to contain adequate warnings and instructions;

   E. Placed into the stream of commerce a portable gasoline container that was unfit for its intended use;

   F. Placed into the stream of commerce a portable gasoline container likely to cause injury in its ordinary use;

   G. Failed to guard against flashback in the product design;

   H. Failed to incorporate a flame arrester in the product design;

   I. Failed to incorporate explosion proofing material in the product design;

   J. Failed to incorporate an explosion suppression system in the product design;

K. Failed to guard against the product's hidden or latent defects;

L. Failed to properly test its portable gasoline containers and prototypes thereof with flame arresters and/or explosion suppression materials;

M. Failed to properly inspect and/or test its portable gasoline containers for susceptibility to flashback explosions;

N. Failed to provide adequate instructions and warnings with the product after learning, knowing, or having reason to know, of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

O. Failed to provide adequate warnings that would be reasonably calculated to catch the attention of a consumer and/or user or that would convey a fair indication of the nature and extent of the dangers involved in using or misusing their product;

P. Failed to adequately warn consumers and other users of the inherent dangers associated with use of its portable gasoline containers;

Q. Failed to actively seek information regarding incidents in which consumers, users, and bystanders were injured and/or killed when they encountering such portable gasoline containers;

R. Failed to actively seek information regarding incidents involving explosion and/or internal combustion of portable gasoline containers;

S. Failed to protect foreseeable users of the portable gasoline containers from the dangers present in the use of their containers that it knew or should have known existed;

T. Failed to give adequate notice to consumers and users of the concealed danger, namely that gasoline vapors outside the container, when exposed to an ignition source, can ignite and that the ensuing flames can travel back inside the container, causing internal combustion and explosion;

U. Failed to provide post-sale warnings after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

V. Failed to take subsequent remedial measures or to recall the product after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

W.  Ignored or failed to investigate complaints about the defects existing in the product that rendered it unreasonably dangerous for its intended use;

X.  Ignored or failed to investigate scientific, technological, and industry information and studies regarding the efficacy of flame arresters and/or explosion suppression materials;

Y.  Ignored or failed to investigate national publications relating to the dangers and risks involved with the use of portable gasoline containers that do not contain flame arresters;

Z.  Ignored and/or failed to investigate other lawsuits involving similar claims and incidents in which consumers, users, and/or bystanders were severely and routinely burned and/or killed when encountering such portable gasoline containers;

AA. Ignored and/or failed to investigate similar incidents involving portable gasoline containers;

BB. Failed to request that the ASTM International F15.10 Subcommittee consider a standard to include flame arresters and/or explosion suppression materials in portable gasoline containers;

CC. Failed to report incidences and lawsuits involving other consumers, users, and bystanders, who have been burned and/or killed when encountering the portable gasoline containers to the Consumer Product Safety Commission.

42. As an actual and proximate result of Defendant's negligent acts and/or omissions, the portable gasoline container that caused T. D.'s injuries was placed into the stream of commerce in a defective and unreasonably dangerous condition.

43. As an actual and proximate result of Defendant's negligent acts and/or omissions, Plaintiffs were subjected to the occurrence which makes the basis of this suit and have suffered the resulting injuries and damages described herein.

44. T. D.'s injuries and the manner in which they occurred were reasonably foreseeable to Defendant who had actual and/or constructive knowledge, from within the industry, national publications, and prior lawsuits, that consumers, users, and bystanders were being routinely burned and/or killed when encountering their portable gasoline containers.

## COUNT III
### Breach of Warranty

45. Plaintiffs adopt the allegations of paragraphs 1 - 45 above and incorporate the same where relevant.

46. Defendant, by and through the sale of their portable gasoline containers, expressly and impliedly warranted to the consumer and/or foreseeable users, such as Plaintiffs, that the container was fit for its ordinary and foreseeable purposes.

47. Plaintiffs made ordinary use of the container in reliance on said warranties.

48. Contrary to said warranties, the portable gasoline container was defective and unfit for its ordinary and foreseeable purposes, rendering it unreasonably dangerous.

49. As an actual and proximate result of Defendant's breach of said warranties, the portable gasoline container was placed into the stream of commerce in a defective and unreasonably dangerous condition.

50. As an actual and proximate result of Defendant's breach of said warranties, T. D. suffered severe and catastrophic injuries when the container unexpectedly and violently exploded.

51. T. D.'s injuries and the manner in which they occurred were reasonably foreseeable to Defendant who had actual and/or constructive knowledge, from within the industry, national

publications, and prior lawsuits, that consumers, users, and bystanders were being routinely burned and/or killed when encountering their portable gasoline containers.

52. Defendant breached their express and implied warranties by the failure of the gasoline container itself and by improper marketing (i.e., failure to warn of the risks associated with the use of their product and failure to provide instructions for safe operation).

## COUNT IV
### Misrepresentation

53. Plaintiffs adopt the allegations of paragraphs 1 - 51 above and incorporate the same where relevant.

54. Defendant is strictly liable to Plaintiffs pursuant to § 402B of the Restatement (Second) of Torts, for misrepresenting to consumers and/or foreseeable users, such as Plaintiffs, that their portable gasoline containers were safe and without defect.

55. Such representation was false and involved a material fact concerning the character or quality of the gasoline container in question.

56. Plaintiffs, justifiably relied on such representation, which constituted a proximate and producing cause of T. D.'s injuries.

## COUNT V
### Negligence Per Se

57. Plaintiffs adopt the allegations of paragraphs 1 - 61 above and incorporate the same where relevant.

PLAINTIFFS' ORIGINAL COMPLAINT
*Delz v. Blitz, et al.*                                                                                   PAGE 12 OF 16

58. Defendant's failure to report the prior claims and/or potential hazards associated with their portable gasoline containers as required by the Consumer Product Safety Act, 15 U.S.C. § 2064, 2084, constituted negligence per se.

59. As users of a consumer product, Plaintiffs were members of the class of persons the statute was designed to protect and T. D.'s injuries are of the type the statute was designed to prevent.

60. Because Defendant failed to report the prior claims and/or potential hazards associated with their defective and unreasonably dangerous portable gasoline containers, it was foreseeable that users of the product, such as Plaintiffs, could be severely injured and/or killed when the container unexpectedly and violently exploded.

61. Defendant's violations of the consumer product safety rules were done without excuse.

62. Defendant's failure to report the prior claims and/or potential hazards associated with their portable gasoline containers was a proximate cause of T. D.'s injuries.

## DAMAGES

63. Plaintiffs adopt the allegations of paragraphs 1 - 69 above and incorporate the same where relevant.

64. Plaintiffs seek all damages recoverable under both statutory and common law.

65. As a direct and proximate result of Defendant's acts and/or omissions, T. D. suffered severe, painful, and catastrophic burn injuries, which resulted in the following damages:

    A. Past and future medical expenses;

    B. Past and future mental anguish;

C. Past and future physical pain and suffering;

D. Past and future physical impairment;

E. Past and future physical disfigurement;

F. Past and future lost earnings;

G. Loss of future earning capacity; and

H. Loss of consortium.

## EXEMPLARY DAMAGES

66. Plaintiffs adopt the allegations of paragraphs 1 - 72 above and incorporate the same where relevant.

67. Defendant's acts and/or omissions pertaining to the design and production of their portable gasoline containers, when viewed objectively from Defendant's standpoint at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others from gasoline containers that are highly susceptible to explosions.

68. Moreover, Defendant had actual, subjective awareness of such risk but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others.

69. Defendant's acts and/or omissions constituted a flagrant disregard for the safety of consumers, users, and bystanders that encounter their portable gasoline containers, including Plaintiffs.

70. Thus, Plaintiffs are entitled to exemplary damages for injuries resulting from gross negligence in an amount to be determined by a jury.

PLAINTIFFS= ORIGINAL COMPLAINT
*Delz v. Blitz, et al.*                                                                                          PAGE 14 OF 16

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A. For damages in excess of $75,000 sustained by Plaintiffs including, but not limited to, those damages set forth above in an amount to be determined by the trier of fact;

B. For exemplary damages in an amount to be determined by the trier of fact;

C. For pre-judgment and post-judgment interest;

D. For all costs of Court; and

E. For any such further relief that Plaintiffs may be justly entitled.

Respectfully submitted,

The TRACY firm 

_____
E. Todd Tracy (Lead Counsel)
State Bar No. 20178650
etoddtracy@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
acounts@vehiclesafetyfirm.com
5473 Blair Road, Suite 200
Dallas, TX  75231
(214) 324-9000 Phone
(972) 387-2205 Fax

**Matthew B. Flanery**
Texas Bar No. 24012632
matt@grantandflanery.com
**Darren Grant**
Texas Bar No. 24012723
darren@grantandflanery.com
GRANT AND FLANERY, P.C.
216 W. Erwin Suite 200
Tyler, Texas 75702
Tel:  (903) 596-8080
Fax: (903) 596-8086

**Valeri Stiers Malone**
Texas Bar No. 24014508
vmalone@malonefirm.com
MALONE LEGAL GROUP, PLLC
Chase Bank Tower
4245 Kemp, Suite 520
Wichita Falls, Texas 76308
Tel: (940)689-8811
Fax: (940)689-0081

ATTORNEYS FOR PLAINTIFFS

**PLAINTIFFS RESPECTFULLY DEMAND A TRIAL BY JURY ON ALL COUNTS AND ISSUES.**